HARVEY MANGAM, JR., per Guardian, Respondent, v. THE BROOKLYN RAILROAD COMPANY, Appellant.

38  455
.15  109

NEGLIGENCE. CONTRIBUTORY NEGLIGENCE. IMPUTING TO INFANT, NEG-
LIGENCE OF PARENT. The negligence of defendant's agent, a car-driver,
whereby the plaintiff, an infant between three and four years of age, was
injured, is undisputed. The present issue arises upon the alleged con-
tributory negligence of the child and of his parents or guardians.

*Held*, that the escape of a child into the street, through an open window
coming to within four feet of the floor, this being his only means of
egress, the doors being locked, will not warrant the conclusion, as a matter
of law, that the parent was guilty of negligence. At most, the question
of fact should be submitted to the jury. GROVER, J.

*Held*, also, that an infant, three or four years of age, is not to be deemed
*sui juris*, and is incapable of forfeiting his remedy against a conceded
wrong doer, by reason of his own personal negligence. MASON, J.

Hence, upon proof of facts and conditions like the foregoing on part of
plaintiff, the court were not justified in nonsuiting him. Id.

Where there is any doubt as to a child being of such age and capacity that,
in law, he should be held *sui juris*, it should be left to the jury to say by
their verdict whether he is so or not. Id.

APPEAL from an order of the Supreme Court reversing a judgment of nonsuit ordered at Circuit, and directing a new trial. The action was brought by the plaintiff to recover damages for an injury received by being struck by a car of defendant, running on its road in Brooklyn, by which the plaintiff was knocked down, and his leg run over and injured so as to require amputation. The proof showed, that the plaintiff lived with his father, in Brooklyn; that about twenty minutes before receiving the injury, he was upon a balcony, at the rear of the house; that there was no opportunity to get from the rear into the street; that he was at this time seen by his sister, who went with another woman into the yard to hang out clothes; that the only mode by which he could get into the street was from the front part of the house; that the front doors were closed and locked; that there was a window in the front, coming to within about four feet of the floor, which was raised from the bottom; that the only mode of egress, by which the plaintiff could have got

into the street, was through this window. The evidence showed, that the plaintiff, after getting out of the house, passed down North Tenth street, towards First street; that the car in question was running along First street, towards Tenth; that, at the junction, the plaintiff crossed the track of the road in front of the mules drawing the car; that he got out of the way of the mules, but was struck by the dash-board of the car and knocked down, and received the injury; that the driver of the car had caught a pigeon, which he had in his hands and was sitting down looking at it, having wound his lines around the brake, and was paying no attention to his team, or to what might be on the track at the time of approaching the place of collision, nor until after its occurrence.

*C. F. Southmayd*, for the respondent.

*G. T. Jenks*, for the appellant.

Grover, J. The nonsuit granted at the Circuit can only be sustained upon the ground, that the evidence failed to show that the injury received by the plaintiff resulted from the negligence of the driver of the car, or that it showed the negligence of the plaintiff, or that of those having the care of him, and whose negligence was imputable to him, contributed to the injury received. Upon the first ground, no question is made by the counsel of the appellant. The negligence of the driver was clearly proved. It was his duty, while driving in the streets of Brooklyn, to keep entire control of his team as far as practicable; to be in a position to speedily apply the brake; and to be vigilant in observing the track, so as to enable him, as far as practicable, to avoid inflicting injury upon others. All of this was omitted by the driver, upon the occasion in question. Upon the latter ground there is more doubt. In *Hartfield* v. *Roper* (21 Wend. 615), it was held, that, when a child of such tender years as to be incapable of avoiding danger was permitted by his parents or guardians to be in the public streets, and then received an injury by being run over by a traveler who failed to discover him while standing or sitting in the traveled track, they

could not recover unless the traveler was guilty of gross negligence, or inflicted the injury voluntarily. The principle of this case has been since its determination often applied by the courts of this State to analogous cases, and must now be regarded as the settled law, notwithstanding a somewhat different rule prevails in some of the other States. See *Darley* v. *Norwich Railroad Co.* (26 Conn. 591), and cases cited. This brings us to an inquiry as to the degree of care required from parents and guardians in keeping such a child from the street. The counsel for the defendant insists, that it must be such care as effectually to accomplish the object, and that any thing short of this is negligence. While, on the other hand, it is claimed by the plaintiff, that to constitute negligence in the parent or guardians, there must be an omission of such care as persons of ordinary prudence exercise and deem adequate for that purpose. The latter appears to be the conclusion required by the analogies of the law. Legal negligence is the omission of such care as persons of ordinary prudence exercise and deem adequate to the circumstances of the case. This definition, applied to the point in consideration, will exonerate the parents from the charge of negligence, if they used that degree of care. This conclusion is also supported by the reasoning in *Hartfield* v. *Roper* (*supra*). It is there said, that the law has placed infants in the hands of vigilant and generally affectionate keepers, their own parents, and if there be any legal responsibility for damages, it lies on them. Surely, an infant could not recover against his parent or guardian, for negligence in permitting him to escape into the street, unless he could show some omission of ordinary care to prevent it. The inquiry upon this point, then, is, whether the parents of the plaintiff were guilty of negligence, in permitting him to get into the street; for, if not, the nonsuit cannot be sustained upon that ground. The evidence shows, that he was not permitted to go, unattended, in the street; that he was lost sight of by his sister for only about twenty minutes; that his only means of access to the street was by climbing out of an open window, which only came within four feet of the floor.

There was no evidence, that he had ever before got out of this window, or attempted to. I do not think that failing to guard this aperture, will warrant the conclusion, as matter of law, that the parent was guilty of negligence. At most, it should only have been submitted to the jury as a question of fact. The only remaining question is, whether the plaintiff himself was guilty of negligence contributing to the injury. This leads to an inquiry as to what degree of care is required of an infant four years old. In *Daly* v. *Norwich R. R. Co.* (*supra*), it was held, that negligence could not be imputed to a child of such tender years as to be wholly incapable of the exercise of care. In *Robinson* v. *Cone* (22 Vermont), it was held, that all that could be required of such a child, was the exercise of such care as it was capable of. In *Lynch* v. *Murdin* (41 Eng. Com. Law, 422), it was held, where the defendant's cartman had left his horse and cart standing unattended in the street for half an hour, and children gathered around it for play, and the plaintiff got into the cart, and, while getting out, another lad started the horse, thereby causing the plaintiff to fall, and the cart to run over him, breaking his leg, that the plaintiff could recover. It will be observed, that, in this case, the plaintiff (seven years old) had done a positive act (getting into the cart), in itself wrongful, and which had directly contributed to the injury, and which would most clearly have barred an action by an adult for a similar injury, yet the court held he had acted from childish instinct, and that this was not an impediment in the way of a recovery. These cases show, that a somewhat different rule, in determining the care to be exercised, is to be applied to infants, than is applicable to adults, when the inquiry is whether their negligence has contributed to an injury received; that, if there is no negligence in the parents or guardians in permitting the child to be in the street, and he has then received an injury from the negligence of another, he can maintain an action, unless he has omitted such care as might reasonably be expected from one of his capacity. Applying this rule to the conduct of the plaintiff, the evidence shows, that he was not guilty of the omission of any care that might have been

expected from one of his years. After getting into the street, he ran along Tenth until he came to First, and then ran across the track ahead of the team, getting out of their way, but not out of the way of the dash-board of the car. He was too young to possess discretion to guard against that danger, and his not doing so is not, under the circumstances, to be regarded as negligence in him.

The order appealed from must be affirmed, and judgment final, upon the stipulation, be given to the plaintiff.

MASON, J. In law, some persons are independent, and some are subject to another, or, as it is expressed in the civil law, "*quaedam personæ sui juris sunt, quaedam olicuo juri subjectæ.*" This rule applies to infants in their relations to society, who are of such tender age that they are incapable of self-control and personal protection. An infant, in its first years, is not *sui juris.* It belongs to another, to whom discretion in the care of its person is exclusively confided. The custody of the infant of tender years is confided by law to its parents, or those standing in *loco parentis,* and not having that discretion necessary for personal protection, the parent is held, in law, to exercise it for him, and, in cases of personal injuries received from the negligence of others, the law imputes to the infant the negligence of the parents. The infant being *non sui juris,* and having a keeper, in law, to whose discretion, in the care of his person, he is confided, his acts, as regards third persons, must be held, in law, the act of the infant; his negligence, the negligence of the infant. The law has not fixed the age at which the infant shall be deemed, in law, *non sui juris,* although it may be safely assumed, in law, that an infant of the age of three years and seven months is not *sui juris.* In the case of *Hartfield* v. *Roper* (21 Wend. 615), it was held, that an infant of the age of two years was not *sui juris,* while, in the case of *McMahon* v. *The Mayor, etc., of N. Y.* (33 N. Y. 642), it was held, that an intelligent boy of the age of eleven years was *sui juris.* The case of *Honesburgher* v. *The Second Av. R. R. Co.* (33 How. 195), where the infant was a sprightly boy, of the age

of six or seven years,. the case was regarded so near the border line, that it was held proper to submit the case to the jury, to decide whether the infant was *sui juris* or not. If there were any doubt as to this child being of the age and capacity that, in law, he should be held *sui juris*, it certainly should have been left to the jury to say by their verdict whether he was so or not. I apprehend, however, that it is not to be doubted, in a case like the present, that an infant of three to four years of age, is not to be deemed *sui juris*, but to be deemed, in law, as in the keeping of his parents, or other lawful custodians. The rule is well settled by the adjudications in this State, that such an infant who is *non sui juris*, is incapable of forfeiting its remedy against a conceded wrong-doer, by his personal negligence, and it is for this very reason that it is constructively chargeable with the negligence of its legal custodian.

As this child had not, by any personal wrong of its own, forfeited its right of action for this injury, the defense, in this case, must be predicated upon constructive negligence, or upon imputing to the plaintiff and charging him with the negligence of his mother. This is a good defense in law, if it is made out, and the only question is, whether, upon the evidence in the case, this defense is so clearly manifest, that the judge was justified in taking the case from the jury. I do not think it was, and, consequently, the General Term were right in granting a new trial. It was, to say the least, a fair question for the jury upon the evidence, whether the imputation of negligence can be attributed to the mother, in the escape of this child from the house into the street, where it was injured, and, if she was not guilty of negligence in this particular, then the plaintiff was clearly entitled to recover, for the defendant's driver was certainly guilty of negligence, in running over the plaintiff. There can be no doubt, that, had he been giving ordinary attention to his duties, this injury would never have occurred; and I cannot but think it was a grossly negligent act, in this driver, to wind his lines around the brake, and trust to the mules entirely to govern themselves in the streets of this populous city, and giving his

exclusive attention to the bird he had caught, and not to his team. An infant, of even this tender age, is not an outlaw in the street, where all persons may be grossly negligent in regard to his person; and, where he escapes from the house of his keepers without any fault or negligence of those having the custody of him, then the rule of law, that it is a defense to those who have negligently injured him, to show, that his personal negligence concurred in producing the injury, does not apply.

The child, being *non sui juris*, cannot, personally, be held to any rule of conduct in regard to such negligence. He is incapable, in law, of doing any act that will deprive him of his action for injuries negligently inflicted upon him by others. His parent or other custodian cannot be chargeable with negligence for his conduct in the street, where the child has escaped from the house without their knowledge or negligence. Any other rule would be unjust and unreasonable, as affording no protection to helpless infants against injuries from the negligent and careless conduct of others. In short, it would make them little less than outlaws in the street, unless attended by their parents or other lawful custodians. They are not beyond the pale of the law when in the streets. Common humanity is alive to their protection, and the law, both in reason and justice, and out of compassion to their weakness and inability to protect themselves, should throw a broader shield of protection around them against injuries from the careless conduct of the strong, than it affords to an adult, who is capable of self-defense and protection.

There is no reason, propriety or justice in the rule which would give no more protection to the one than to the other. The law, in this class of cases, is not subject to such a reproach. It says, the infant of three and a half years cannot be expected to exercise discretion and govern himself cautiously as regards danger, and, consequently, he shall be held, in law, *non sui juris*, and none who have negligently and carelessly injured him should be permitted to say he was personally negligent, and thereby contributed to the injury. The law very wisely says: At the same time, his keeper or custo-

dian must not be guilty of any negligence in allowing him to be exposed to the danger, if he does, his custodian's negligence shall be imputed to him.

Applying these principles to this case, the judge at Circuit was not justified in nonsuiting the plaintiff, and the General Term were right in granting a new trial, and the order should be affirmed, and judgment given for the plaintiff.

Judgment affirmed.